# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANTOINE GROUP DBA ANTOINE DENTAL CENTER, LLC AND BEHZAD NAZARI, DDS | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-2524 |
| OPULENT DIGITAL SPECIALISTS LLC AND AMANN GIRRBACH NORTH AMERICA, LP | § § § § § | |
| *Defendants*. | § § | |

## DEFENDANT OPULENT DIGITAL SPECIALISTS LLC'S ANSWER TO PLAINTIFFS' ORIGINAL PETITION AND COUNTERCLAIM

Defendant Opulent Digital Specialists LLC ("Opulent") files this answer to Plaintiffs' First Amended Complaint ("Complaint") filed by Antoine Group DBA Antoine Dental Center, LLC and Behzad Nazari, DDS and Opulent's counterclaim as follows:

### I.   ANSWER

1. Opulent admits the allegations in Paragraph 1 through Paragraph 8.

2. Opulent denies the allegation in Paragraph 9 and demands strict proof thereof.

3. As to Paragraph 10, Opulent admits to representing to Plaintiffs that the use of the equipment would reduce average material costs over the use of a lab as indicated in the chart Opulent provided to Plaintiffs, which demonstrated such savings but was also dependent on the variables used in the calculation of savings which are subject to change; however, Opulent denies representing to Plaintiffs that the equipment would result in an increase in Plaintiffs volume or that

Plaintiffs would realize specific monetary savings outside of the variables used within the chart and the remainder of the allegations in the paragraph.

4. Opulent denies the allegation in Paragraph 11 and demands strict proof thereof.

5. As to Paragraph 12, Opulent admits that on 12/30/2023, Plaintiffs entered into an agreement with Opulent for the purchase of a milling machine but denies the remainder including that the milling machine costs $95,990 as the purchase price included a Ceramill Mind Ulitmate Bundle, OpuFace, Ceramaill DNA Motion 3 Milling Machine, Ceramill DNA Motion 3 E.Max Holder, Ceramill C-Clamp Holder, Ceramill DNA Rotational Implant Milling Arm, Motion 3 Start Up Kit, InCADCAM (CAM Add-On Software), One Year Fully Warranty Program, CAD/CAM Computer, Ceramill Term III Zirconia Sintering Furnace, Vita 6000 M Glazing Furnace, Opulent Concierge Services and taxes.

6. Opulent admits that Plaintiff Nazari entered into a financing agreement with TIAA for the purchase of the equipment, but Opulent does not have sufficient information to admit or deny the remainder of Paragraph 13.

7. Opulent admits that Plaintiffs received partial delivery of the equipment purchased, that Plaintiffs did not take delivery of the milling machine, that as of 4/5/2023 the milling machine was not in transit to Plaintiffs, and that without receiving the milling machine, Plaintiffs were not able to benefit from the use of the milling machine; however, Opulent denies the remainder of Paragraph 14 and demands strict proof thereof.

8. Opulent admits that Plaintiffs were offered a refund conditioned on Plaintiffs returning the delivered equipment but Opulent denies the remainder of Paragraph 15 and demands strict proof thereof.

9. Opulent denies the allegation in Paragraph 16 and demands strict proof thereof.

10. Opulent denies the allegation in Paragraph 17 and demands strict proof thereof.

11. Opulent denies the allegation in Paragraph 18 and demands strict proof thereof.

12. Opulent admits that payment was made on or about 12/27/2023 but denies the remaining allegations in Paragraph 19 and demands strict proof thereof.

13. Opulent denies the allegation in Paragraph 20 and demands strict proof thereof.

14. Opulent denies the allegation in Paragraph 21 and demands strict proof thereof.

15. Paragraph 22 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein.

16. Paragraph 23 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein and demands strict proof thereof.

17. Opulent admits that Plaintiffs never took delivery of all of the equipment purchased from Opulent and that Opulent and Plaintiffs never agreed upon a specified date of delivery but denies the remainder of allegations contained within Paragraph 24 and demands strict proof thereof.

18. Paragraph 25 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein.

19. Opulent denies the allegation in Paragraph 26 and demands strict proof thereof.

20. Paragraph 27 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein and demands strict proof thereof.

## II.     AFFIRMATIVE & OTHER DEFENSES

Opulent asserts the following defenses to Plaintiffs' claims:

21.     Plaintiffs' claims are barred or any failure to perform is excused by the doctrines of affirmation, ratification, and waiver.

22.     Plaintiffs' claims are barred or any failure to perform is excused by the doctrine of accord and satisfaction.

23.     Plaintiffs' claims are barred by the election of rights doctrine.

24.     One or more of Plaintiffs' claims are barred by the "one satisfaction" and "con-tort" doctrines, or "economic loss" rule.

25.     Opulent is entitled to all offsets and credits available.

26.     Opulent is not liable for the acts, omissions, or conduct of other persons or entities not authorized to act on behalf of them; pleading further, and in the alternative, Opulent is not liable for the acts, omissions, or conduct of its agents who exceeded the scope of their authority.

27.     Plaintiffs' damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and entities, including Plaintiffs, and the acts, omissions, or breaches were intervening and superseding causes of Plaintiffs' damages, if any.

28.     Defendants' actions and omissions, if any, were undertaken in good faith, with the absence of malicious intent to injure Plaintiffs, and constitute lawful, proper and justified means to further the business purposes of Opulent. Any purported conduct of individuals who were or are agents of Opulent was privileged, and those individuals were and are justified in engaging in the conduct attributed to them. Opulent pleads all statutory and common law privileges that may apply to their conduct and those of their agents.

29. Any allegedly wrongful acts or omissions of Opulent, if and to the extent such acts and omissions occurred, were legally excused or justified.

30. Opulent would show its conduct or activity conformed at all times to any and all applicable state and federal statutes, codes, and regulations.

31. Plaintiffs' claims are barred, in whole or in part, by the doctrines of judicial estoppel, collateral estoppel, quasi estoppel, contractual estoppel, equitable estoppel and res judicata.

32. Any alleged wrongful acts or omissions of Opulent, if and to the extent such acts or omissions occurred, was not intentional and resulted from a bona fide error.

33. Plaintiffs' claims must fail due to the failure to tender all amounts admittedly owed.

34. Plaintiffs are not entitled to recover attorney's fees, costs, interest, or penalties from Opulent in this matter.

35. Plaintiffs' claims are barred, in whole or in part, because all of the conditions precedent and statutory requirements for the asserted claims have not been met.

36. Within thirty (30) days after the day on which one or more of their claims received a demand from Plaintiffs, Opulent made a reasonable offer of settlement to Plaintiffs as provided by Section 17.5052(d) of the Texas Business and Commerce Code, which was rejected by Plaintiffs. Said offer was not an admission of liability or that Opulent engaged in any unlawful, false, or deceptive act or practice whatsoever. Opulent is therefore entitled to the defenses and protections afforded by Section 17.5052 of the Texas Business and Commerce Code, including but not limited to applicable limitations for recovery by Plaintiffs of damages and attorney's fees.

37. Plaintiffs were not "consumers" as contemplated by the Texas Deceptive Trade Practices Act, and therefore do not have standing to maintain a cause of action thereunder.

38. The conduct complained of in the Plaintiffs' Petition, even if true, which Opulent denies, did not occur in connection with a consumer transaction. Therefore, the allegations contained in the Plaintiffs' Petition are not actionable under the Texas Deceptive Trade Practices Act.

39. In the alternative, Plaintiffs are business consumers that have assets of $25 million or more or are owned or controlled by a corporation or entity with assets of $25 million or more. Therefore, the allegations contained in the Plaintiffs' Petition are not actionable under the Texas Deceptive Trade Practices Act.

40. Plaintiffs failed to reasonably mitigate any damages that may have resulted from the conducted alleged in the Petition and such failure to mitigate should operate as a bar to the prosecution of one or more of Plaintiffs' claims or, alternatively, operate as an offset against any damages that may be awarded to Plaintiffs.

41. Defendants would show that even if the conduct alleged in the Petition s assumed to be true, which Opulent denies, any such representations are not actionable because the same constitute merely generalizations, opinions or "puffery," and/or are not sufficiently specific to give rise to an objective standard by which they may be measured.

42. Even if the conduct alleged in the Petition is assumed to be true, which Opulent Denies, the Plaintiffs' claims are barred because Opulent's performance of the obligation, which forms the basis of the Plaintiffs' Petition, was impossible to perform due to circumstances which were unanticipated at the time of the agreement.

43. Opulent reserves the right to amend its Answer to Plaintiffs' Original Petition, including asserting any additional affirmative defenses, after it has had an opportunity to more

closely investigate these claims as is its right and privilege under the Federal Rules of Civil Procedure.

### III. DEFENDANT'S COUNTERCLAIM

### FACTS

44. On December 20, 2022, Counter-defendants entered into an agreement with Counter-plaintiff Opulent for the purchase of equipment.

45. No specific date was ever specified as the date of shipment or delivery of the purchased equipment.

46. On April 15, 2022, having received some but not all the purchased equipment, a representative of Counter-defendants notified Counter-plaintiff by email that Counter-defendants were terminating the purchase agreement due to untimely delivery. Counter-defendants also demanded that Counter-plaintiff provide a full refund in the form of paying off Counter-defendants loan with TIAA Bank, which had financed Courter-defendants purchase of the equipment. Counter-defendants provide Counter-plaintiff 15 days to comply with their demands.

47. The April 15, 2022, demand from Counter-defendants to Counter-plaintiff did not include Counter-defendants returning the already delivered equipment to Counter-plaintiff.

48. On April 17, 2023, Counter-defendants, through their attorney, demanded Counter-plaintiff refund the purchase money and pay $445,999.00 to Counter-defendants five business days or on or before May 1, 2023. Counter-plaintiff was told that no litigation would be filed if payment was made on or before 5:00 p.m. on May 1, 2023. The demanded sum of $445,999.00 was calculated based on $250,000.00 in loss of business income and $100,000 in attorney fees.

49. The April 17, 2022, demand from Counter-defendants to Counter-plaintiff did not include Counter-defendants returning the already delivered equipment to Counter-plaintiff.

50. Counter-defendants never provided Counter-plaintiff with notice of their intent to terminate the contract for untimely delivery.

51. Counter-defendants never demand the delivery of the equipment by a certain date.

52. Following Counter-defendants termination of the agreement, Counter-plaintiff offered to deliver of the remaining equipment but Counter-defendant refused delivery.

53. On April 28, 2023, Counter-defendants were offered a refund of the equipment's purchase money upon the return of the delivered equipment; however, Counter-defendants never expressed an acceptance of the refund, nor did Counter-defendants return the delivered equipment.

## VI.  BREACH OF CONTRACT (ANTICIPATORY BREACH)

54. Based on the pertinent facts set forth in this Counterclaim, Counter-plaintiff brings a claim against Counter-defendant for anticipatory breach of the contract due to Counter-defendants refusal to allow Counter-plaintiff a reasonable time to make delivery of the remaining undelivered equipment.

## IV.  BREACH OF CONTRACT (FAILURE TO GIVE NOTICE)

55. Based on the pertinent facts set forth in this Counterclaim, Counter-plaintiff brings a claim against Counter-defendant for breach of contract for failure to provide reasonable notice prior to termination as required by Texas Business and Commerce Code § 2.309. Had Counter-plaintiff been provided the required notice, Counter-plaintiff would have had the opportunity to avoid Counter-defendants termination for untimely delivery as intended by Texas Business and Commerce Code § 2.309.

## V.  DAMAGES

56. For Counter-plaintiff's breach of contract claims, Counter-plaintiff seek the following relief from Counter-defendants: (1) actual damages including but not limited to benefit-

of-the-bargain damages, out-of-pocket damages, mitigation damages, and lost profits, (2) reasonable attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38, (3) prejudgment and postjudgment interest, and (4) costs.

## IV.   REQUEST FOR ATTORNEY'S FEES

57. Opulent hereby requests recovery of court costs and all reasonable and necessary attorney's fees incurred in connection with the defense of the stator fraud claim as the claim is without merit and is groundless in fact or law.

58. Opulent hereby requests recovery of court costs and all reasonable and necessary attorney's fees incurred in connection with the defense of the Texas Deceptive Trade Practice Act claim pursuant to Section 17.50(c) of the Texas Business and Commerce Code.

## V.   AMENDMENT & ALTERNATIVE PLEADING

59. Defendant reserves the right to amend this pleading as discovery progresses, as new information is discovered, and as further allowed by the Federal Rules of Civil Procedure. The claims and defenses asserted in this pleading should also be construed as (counter-)defenses, as appropriate. Where appropriate, the claims and defenses in this pleading are pled in the alternative.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Opulent Digital Specialists LLC prays that Plaintiffs take nothing against Defendant Opulent Digital Specialists LLC and for such other and further relief, both general and special, at law and in equity, to which Defendant Opulent Digital Specialists LLC is entitled.

Respectfully submitted,

EaDo Law, PLLC

/s/ J. Reese Campbell
J. Reese Campbell
Southern District Bar No. 2254986
Texas Bar No. 24045020
Email:  reese@eadolaw.com
3401 Harrisburg Blvd, Suite H2
Houston, TX 77003
Tel. (713) 766-8998
Fax. (713) 347-1880

**ATTORNEY FOR DEFENDANT**
**OPULENT DIGITAL SPECIALISTS LLC**

### CERTIFICATE OF SERVICE

I certify that on September 5, 2023, a true and correct copy of the foregoing document was served on all counsel of record for the parties in accordance with the Federal Rules of Civil Procedure.

/s/ J. Reese Campbell
J. Reese Campbell