**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ANTOINE GROUP LLC d/b/a** | § | |
| **ANTOINE DENTAL CENTER LLC and** | § | |
| **BEHZAD NAZARI, DDS** | § | |
| | § | **Civil Action No. 4:23-cv-02524** |
| **v.** | § | |
| | § | |
| **OPULENT DIGITAL SPECIALISTS, LLC** | § | |

<u>**PLAINTIFFS' 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**</u>

1.      This motion to dismiss pursuant to FRCP 12(b)(6) and alternatively 12(c) is brought on behalf of Plaintiff **Antoine Group LLC d/b/a Antoine Dental Center LLC** ("Antoine Dental") and Plaintiff **Behzad Nazari, DDS** ("Dr. Nazari")(collectively "Plaintiff") with respect to the counterclaims in <u>Defendant Opulent Digital Specialist LLC's First Amended Answer to Plaintiffs' First Amended Complaint and Counterclaim</u> filed on 9/7/2023 (Doc. 17).

2.      This lawsuit was brought by Plaintiff Dr. Nazari and his dental practice against Defendant Opulent for Defendant's failure to deliver a milling machine, which is a high-end piece of dental equipment. Plaintiff paid Defendant $95,990 for this equipment which Defendant never delivered. Per paragraphs 1 and 5 of Defendant's Answer and Counterclaim, it is undisputed that an agreement was entered into in December 2022.[1] Per paragraph 12 of Defendant's Answer and Counterclaim, it is undisputed that Plaintiff paid Defendant on or about 12/27/2022. Per paragraph 7 of Defendant's Answer and Counterclaim, it is undisputed that as of 4/5/2023, more than 90 days after payment was made, the milling machine was not only not delivered, it was not yet even in transit to Plaintiff. Nowhere in Defendant's Answer and Counterclaim does Defendant assert a reasonable time for delivery or why 90 days would not be a reasonable time for delivery or at least

---

[1] At a few different points, Defendant refers to things happening in December 2023 [sic].  However, it should be obvious from context that these are typos and that Defendant is actually referring to December 2022.

to start shipment.

3. Defendant Opulent asserts two "counterclaims" which appear to be nothing more than impermissible repackaging of two of Defendant's defenses as counterclaims. The repackaging of defenses as affirmative claims is disfavored and such claims can be subject to dismissal under Rule 12(b)(6). *See, e.g.*, Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc., Civil Action No. 3:18-CV-0587-N, 2019 U.S. Dist. LEXIS 170933, at *4 (N.D. Tex. 2019); *see also* Ford Motor Co. v. Obsolete Ford Parts, 318 F. Supp. 2d 516, 521 (E.D. Mich. 2004) (noting in the context of a 12(b)(6) motion that "*the two remaining theories that Defendant wishes to pursue as counterclaims do not form a basis for an affirmative claim for damages, but are more appropriately considered affirmative defenses*"). As further explained below, both of Defendant's counterclaims are without merit on their face, are inadequately pled, and should therefore be dismissed.

### I. CLAIM FOR "BREACH OF CONTRACT (ANTICIPATORY BREACH)"

4. In paragraph 56 of Defendant's Answer and Counterclaim, Defendant Opulent asserts a purported counterclaim for "anticipatory breach" alleging "*anticipatory breach of the contract due to Counter-defendants refusal to allow Counter-plaintiff a reasonable time to make delivery of the remaining undelivered equipment.*" This claim fails on its face for a few different reasons.

5. <u>First</u>, the doctrine of anticipatory breach a/k/a anticipatory repudiation can only apply against a party that has remaining material non-monetary performance obligations. *See* RESTATEMENT (SECOND) OF CONTRACTS § 250 ("*When a Statement or an Act Is a Repudiation*"). "*An anticipatory repudiation of a contract may consist of either words or actions by a party to a contract that indicate an intention that he or she is not going to perform the contract according to its terms in the future.*" Builders Sand, Inc. v. Turtur, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ). As one court has explained: "*the doctrine of anticipatory repudiation is more limited than what [the party] contend[s]—the doctrine applies only where both parties to*

*the contract have not fully performed*." <u>Cassis v. Sun Life Assurance Co. of Can.</u>, No. SA CV 17-0148-DOC (KESx), 2018 U.S. Dist. LEXIS 226326, at *23 (C.D. Cal. 2018). The agreement in question is indisputably subject to the Texas Uniform Commercial Code, which begins its definition of anticipatory repudiation as follows: "*When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other. . . .*" TEX. BUS. & COM. CODE § 2.610.

6.     A party who has no remaining performance obligations cannot repudiate or anticipatorily breach a contract for the simple and obvious reason that there are no obligations for the party to breach. In this case, it is undisputed that Plaintiff, the buyer, fully paid Defendant, the seller, for the equipment in question. Defendant does not identify any performance obligation—much less a material and non-monetary performance obligation or a performance obligation which would "substantially impair the value of the contract" to Defendant—that Plaintiff still owed to Defendant that Plaintiff could possibly anticipatorily breach or repudiate.

7.     <u>Second</u>, the "counterclaim" is absurd and inviable on its face because, again, Defendant has already been fully paid, so there is nothing for Defendant to sue for under Defendant's counterclaim. Rather, it appears that Defendant has asserted this counterclaim for impermissible purposes including: (a) recovering attorney's fees for defending a breach of contract claim which is not permissible under Texas law and (b) impeding Plaintiff's ability to fairly and efficiently obtain a final judgment on Plaintiff's affirmative claims.

8.     <u>Third</u>, Defendant does not give fair notice of this counterclaim because Defendant does not state what Defendant contends a reasonable time for performance would be.

## II. CLAIM FOR "BREACH OF CONTRACT (FAILURE TO GIVE NOTICE)"

9.        In paragraph 57 of Defendant's Answer and Counterclaim, Defendant Opulent asserts a

purported counterclaim for "breach of contract" alleging:

> *failure to provide reasonable notice prior to terminating the agreement as required by Texas Business and Commerce Code § 2.309.*

10.        <u>First</u>, as with Defendant's "anticipatory breach" counterclaim, it is undisputed that

Defendant has been fully paid. So this counterclaim appears to be for impermissible purposes

including: (a) recovering attorney's fees for defending a breach of contract claim which is not

permissible under Texas law and (b) impeding Plaintiff's ability to fairly and efficiently obtain a

final judgment on Plaintiff's affirmative claims.

11.        <u>Second</u>, Defendant is misinterpreting TEX. BUS. & COM. CODE § 2.309 (UCC 2-309) as

being a statutory notice and cure provision when it simply is not. Section 2.309 says:

> *(a) The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time.*
> *(b) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.*
> *(c) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.*

Defendant appears to be misinterpreting Subsection (c) as creating some sort of statutory notice

and cure provision. Although Subsection (c) calls for notice, it does not say anything about an

opportunity to cure. Instead, as explained in Official Comment 8 to UCC 2-309 explains:

"*Subsection [(c)] recognizes that the application of principles of good faith and sound commercial

practice normally call for such notification of the termination of a going contract relationship as

will give the other party reasonable time to seek a substitute arrangement*." Defendant's

counterclaim does not assert that Plaintiff denied Defendant an opportunity to seek a ***substitute***

*__arrangement__* or that Defendant even wanted one. Instead, it alleges that Plaintiff denied Defendant an opportunity to force Plaintiff to stay in the *__same arrangement__*. Official Comment 9 also explains: "*Justifiable cancellation for breach is a remedy for breach and is not the kind of termination covered by the present subsection.*" In conferring with Defendant before filing this Motion, Defendant referred to the case <u>Coburn Supply Co. Inc. v. Kohler Co.</u>, 342 F.3d 372 (5th Cir. 2003) as purportedly supporting Defendant's view. But that case actually supports Plaintiff's position. The Coburn Supply case involved a distributor relationship and the pertinent issue was whether the terminating party gave its distributor enough advance notice to find someone else to work with. It cites to and quotes Official Comment 8. The Fifth Circuit in that case ultimately overturned a jury finding that the notice given was insufficient and found that it was sufficient as a matter of law.

12.    <u>Third</u>, Defendant does not allege that Defendant objected to termination or what period of notice of termination should have been given. Official Comment 6, which is cited and quoted with approval by the Fifth Circuit in the Coburn Supply case, says with respect to Subsection (c): "*Parties to a contract are not required in giving reasonable notification to fix, at peril of breach, a time which is in fact reasonable in the unforeseeable judgment of a later trier of fact. Effective communication of a proposed time limit calls for a response, so that failure to reply will make out acquiescence.*" In this case, Defendant does not even allege that Defendant objected to termination, much less alleged that some different advance notice of termination should have been given or was demanded by Defendant. Rather, per paragraphs 47 and 55 of Defendant's Answer and Counterclaim, Defendant alleges that it offered to give Plaintiff a refund. And to reiterate, Defendant has indisputably already been fully paid and Defendant is not seeking damages due to some alleged inability to seek a substitute arrangement. So from the face of Defendant's pleading, Defendant has no injury or damages, which is an essential element of a breach of contract claim.

## PRAYER

Plaintiff prays that the Court dismiss Defendant's counterclaims and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**/s/ Charles R. Parker**

Charles R. Parker
Charlie@parkersanchez.com
Federal Bar # 2314
C. Anderson Parker
Andy@parkersanchez.com
Federal Bar # 567726
Cooke Kelsey
Cooke@parkersanchez.com
Federal Bar # 2896155
Parker & Sanchez PLLC
700 Louisiana St., Suite 700
Houston, TX 77002
(713) 659-7200 (P)

Wayman L. Prince
Wayman@wlplaw.com
Federal Bar # 7315
Law Offices of Wayman L. Prince
9111 Katy Freeway, Suite 301
Houston, TX 77024
(713) 467-1659

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of September, 2023, a true and correct copy of this instrument was served upon all parties *via Email* in compliance with the Federal Rules of Civil Procedure.

**/s/ Charles R. Parker**

Charles R. Parker