UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTOINE GROUP DBA ANTOINE DENTAL CENTER, LLC AND BEHZAD NAZARI, DDS | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-2524 |
| OPULENT DIGITAL SPECIALISTS LLC AND AMANN GIRRBACH NORTH AMERICA, LP | § § § § § | |
| *Defendants.* | § § | |

**DEFENDANT OPULENT DIGITAL SPECIALISTS LLC'S FIRST AMENDED
ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND
FIRST AMENDED COUNTERCLAIM**

Defendant Opulent Digital Specialists LLC ("Opulent") files this defendant Opulent Digital Speciates LLC's First Amended Answer to Plaintiffs' First Amended Complaint ("Complaint") and First Amended Counterclaim as follows:

I.      **ANSWER**

1.      Opulent admits the allegations in Paragraph 1 through Paragraph 8.

2.      Opulent denies the allegation in Paragraph 9 and demands strict proof thereof.

3.      As to Paragraph 10, Opulent admits to representing to Plaintiffs that the use of the equipment would reduce average material costs over the use of a lab as indicated in the chart Opulent provided to Plaintiffs, which demonstrated such savings but was also dependent on the variables used in the calculation of savings which are subject to change; however, Opulent denies representing to Plaintiffs that the equipment would result in an increase in Plaintiffs volume or that

Plaintiffs would realize specific monetary savings outside of the variables used within the chart and the remainder of the allegations in the paragraph.

4.  Opulent denies the allegation in Paragraph 11 and demands strict proof thereof.

5.  As to Paragraph 12, Opulent admits that on 12/30/2023, Plaintiffs entered into an agreement with Opulent for the purchase of a milling machine but denies the remainder including that the milling machine costs $95,990 as the purchase price included a Ceramill Mind Ulitmate Bundle, OpuFace, Ceramaill DNA Motion 3 Milling Machine, Ceramill DNA Motion 3 E.Max Holder, Ceramill C-Clamp Holder, Ceramill DNA Rotational Implant Milling Arm, Motion 3 Start Up Kit, InCADCAM (CAM Add-On Software), One Year Fully Warranty Program, CAD/CAM Computer, Ceramill Term III Zirconia Sintering Furnace, Vita 6000 M Glazing Furnace, Opulent Concierge Services and taxes.

6.  Opulent admits that Plaintiff Nazari entered into a financing agreement with TIAA for the purchase of the equipment, but Opulent does not have sufficient information to admit or deny the remainder of Paragraph 13.

7.  Opulent admits that Plaintiffs received partial delivery of the equipment purchased, that Plaintiffs did not take delivery of the milling machine, that as of 4/5/2023 the milling machine was not in transit to Plaintiffs, and that without receiving the milling machine, Plaintiffs were not able to benefit from the use of the milling machine; however, Opulent denies the remainder of Paragraph 14 and demands strict proof thereof.

8.  Opulent admits that Plaintiffs were offered a refund conditioned on Plaintiffs returning the delivered equipment but Opulent denies the remainder of Paragraph 15 and demands strict proof thereof.

9.  Opulent denies the allegation in Paragraph 16 and demands strict proof thereof.

10. Opulent denies the allegation in Paragraph 17 and demands strict proof thereof.

11. Opulent denies the allegation in Paragraph 18 and demands strict proof thereof.

12. Opulent admits that payment was made on or about 12/27/2023 but denies the remaining allegations in Paragraph 19 and demands strict proof thereof.

13. Opulent denies the allegation in Paragraph 20 and demands strict proof thereof.

14. Opulent denies the allegation in Paragraph 21 and demands strict proof thereof.

15. Paragraph 22 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein.

16. Paragraph 23 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein and demands strict proof thereof.

17. Opulent admits that Plaintiffs never took delivery of all of the equipment purchased from Opulent and that Opulent and Plaintiffs never agreed upon a specified date of delivery but denies the remainder of allegations contained within Paragraph 24 and demands strict proof thereof.

18. Paragraph 25 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein.

19. Opulent denies the allegation in Paragraph 26 and demands strict proof thereof.

20. Paragraph 27 contains a statement of relief to which no response is required. To the extent a response is required, Opulent denies that Plaintiffs are entitled to the relief requested therein and demands strict proof thereof.

## II.     AFFIRMATIVE & OTHER DEFENSES

Opulent asserts the following defenses to Plaintiffs' claims:

21.     Opulent's failure to comply or perform is excused by Plaintiffs' prior repudiation of the same agreement.

22.     Opulent's failure to comply or perform is excused by Plaintiffs' failure to give notice prior to termination of the same agreement.

23.     Plaintiffs' claims are barred or any failure to perform is excused by the doctrines of affirmation, ratification, and waiver.

24.     Plaintiffs' claims are barred or any failure to perform is excused by the doctrine of accord and satisfaction.

25.     Plaintiffs' claims are barred by the election of rights doctrine.

26.     One or more of Plaintiffs' claims are barred by the "one satisfaction" and "con-tort" doctrines, or "economic loss" rule.

27.     Opulent is entitled to all offsets and credits available.

28.     Opulent is not liable for the acts, omissions, or conduct of other persons or entities not authorized to act on behalf of them; pleading further, and in the alternative, Opulent is not liable for the acts, omissions, or conduct of its agents who exceeded the scope of their authority.

29.     Plaintiffs' damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and entities, including Plaintiffs, and the acts, omissions, or breaches were intervening and superseding causes of Plaintiffs' damages, if any.

30.     Opulent's actions and omissions, if any, were undertaken in good faith, with the absence of malicious intent to injure Plaintiffs, and constitute lawful, proper and justified means to further the business purposes of Opulent. Any purported conduct of individuals who were or are

agents of Opulent was privileged, and those individuals were and are justified in engaging in the conduct attributed to them. Opulent pleads all statutory and common law privileges that may apply to their conduct and those of their agents.

31. Any allegedly wrongful acts or omissions of Opulent, if and to the extent such acts and omissions occurred, were legally excused or justified.

32. Opulent would show its conduct or activity conformed at all times to any and all applicable state and federal statutes, codes, and regulations.

33. Plaintiffs' claims are barred, in whole or in part, by the doctrines of judicial estoppel, collateral estoppel, quasi estoppel, contractual estoppel, equitable estoppel and res judicata.

34. Any alleged wrongful acts or omissions of Opulent, if and to the extent such acts or omissions occurred, was not intentional and resulted from a bona fide error.

35. Plaintiffs are not entitled to recover attorney's fees, costs, interest, or penalties from Opulent in this matter.

36. Plaintiffs' claims are barred, in whole or in part, because all of the conditions precedent and statutory requirements for the asserted claims have not been met.

37. Within thirty (30) days after the day on which one or more of their claims received a demand from Plaintiffs, Opulent made a reasonable offer of settlement to Plaintiffs as provided by Section 17.5052(d) of the Texas Business and Commerce Code, which was rejected by Plaintiffs. Said offer was not an admission of liability or that Opulent engaged in any unlawful, false, or deceptive act or practice whatsoever. Opulent is therefore entitled to the defenses and protections afforded by Section 17.5052 of the Texas Business and Commerce Code, including but not limited to applicable limitations for recovery by Plaintiffs of damages and attorney's fees.

38. Plaintiffs were not "consumers" as contemplated by the Texas Deceptive Trade Practices Act, and therefore do not have standing to maintain a cause of action thereunder.

39. The conduct complained of in the Plaintiffs' Complaint, even if true, which Opulent denies, did not occur in connection with a consumer transaction. Therefore, the allegations contained in the Plaintiffs' Complaint are not actionable under the Texas Deceptive Trade Practices Act.

40. In the alternative, Plaintiffs are business consumers that have assets of $25 million or more or are owned or controlled by a corporation or entity with assets of $25 million or more. Therefore, the allegations contained in the Plaintiffs' Complaint are not actionable under the Texas Deceptive Trade Practices Act.

41. Plaintiffs failed to reasonably mitigate any damages that may have resulted from the conducted alleged in the Complaint and such failure to mitigate should operate as a bar to the prosecution of one or more of Plaintiffs' claims or, alternatively, operate as an offset against any damages that may be awarded to Plaintiffs.

42. Opulent would show that even if the conduct alleged in the Complaint assumed to be true, which Opulent denies, any such representations are not actionable because the same constitute merely generalizations, opinions or "puffery," and/or are not sufficiently specific to give rise to an objective standard by which they may be measured.

43. Even if the conduct alleged in the Complaint is assumed to be true, which Opulent Denies, the Plaintiffs' claims are barred because Opulent's performance of the obligation, which forms the basis of the Plaintiffs' Complaint, was impossible to perform due to circumstances which were unanticipated at the time of the agreement.

44. Opulent reserves the right to amend its Answer to Plaintiffs' Complaint, including asserting any additional affirmative defenses, after it has had an opportunity to more closely investigate these claims as is its right and privilege under the Federal Rules of Civil Procedure.

### III. COUNTERCLAIM

### FACTS

45. On December 20, 2022, Counter-defendants Antoine Group DBA Antoine Dental Center, LLC and Behzad Nazari, DDS entered into an agreement with Counter-plaintiff Opulent (the "Agreement") for the purchase of services and equipment (the "Equipment").

46. The Agreement included, but was not limited to, the purchase of an Amann Girrbach CAD/CAM Computer, Ceramill Mind CAD software, InCADCAM software, a OpulFACE 3D Facial Scanner, a Ceramill DNA Motion 3 Milling Machine and accessories, a Ceramill Therm III Zirconia Sintering Furnace, and a Vita 6000 M Glazing Furnace.

47. The Agreement did not specify a date of delivery. The Agreement's shipping terms were as follows: "Estimated delivery times are eight to ten weeks from receiving payment."

48. Although the Agreement provided an optimal estimated delivery period, it is not unusual or uncustomary for the delivery of specialized medical equipment to be delayed beyond estimates made at the time of sale, which is what occurred in this matter. This is why only estimates can be provided at the time of purchase. Vendors such as Counter-plaintiffs are often at the mercy of a single manufacturer; therefore, delivery can be delayed due to manufacturing delays or even changes in the policies or practices of the manufacturer, much less any other contingencies outside of Counter-plaintiff's control.

49. It is not unusual or uncustomary for the delivery of this type of specialist equipment to take upwards to six months The " usual and customary time required for the transportation and

delivery of

50. On or about December 27, 2022, Behzad Nazari entered into an equipment finance agreement with TIAA Bank in which TIAA agreed to provide Opulent with the purchase money for the equipment in exchange for Behzad Nazari's promise to make payments to TIAA Bank according to the agreement's schedule which included no payments being due until July 2023.

51. On February 13, 2023, Counter-plaintiff emailed Counter-defendants to notify Counter-defendants that Counter-plaintiff "forecasted" the delivery of the Ceramill DNA Motion 3 Milling Machine for the beginning of March.

52. On March 21, 2023, Counter-defendants sent an email to Counter-plaintiff complaining that they had not yet received all of the Equipment.

53. On March 23, 2023, after discussing the matter with Counter-defendants and in consideration of the delay, Counter-plaintiff upgraded the order to a "Matik Production Unit". Counter-plaintiff informed Counter-defendants that they would be provided with an estimated delivery date for the Equipment when they had one. Counter-defendants accepted the upgrade.

54. As of April 5, 2023, Counter-plaintiff had partially performed by delivery some but not all of the equipment including an OpulFACE 3D Facial Scanner, a Ceramill Therm III Zirconia Sintering Furnace, and a Ceramill Airstream.

55. On April 15, 2023, having received some of the Equipment and a free upgrade in equipment, a representative of Counter-defendants sent an email to Counter-plaintiff demanding that Counter-plaintiff provide a full refund to be paid to TIAA Bank within fifteen (15) days; however, the email did not expressly cancel or terminate the Agreement, nor did Counter-defendants address what they intended to do with the equipment they had already received.

56. On April 17, 2023, Counter-defendants sent a notice of termination of the

Agreement to Counter-plaintiff, citing Counter-plaintiff's failure to deliver or provide a definitive delivery date for the Equipment. In the notice, Counter-defendants demanded that Counter-plaintiff terminate the finance agreement with TIAA Bank, refund the purchase money of $95,999.00 directly to Counter-defendants, and pay $445,999.00 to Counter-defendants. The notice demanded these things to be done within five (5) business days or on or before May 1, 2023. Counter-defendants explained that the demanded sum of $445,999.00 was calculated based on $250,000.00 in loss of business income and $100,000 in attorney fees. The second demand also provided that no litigation would be filed if payment was made on or before 5:00 p.m. on May 1, 2023.

57. Just as in the April 15, 2023 demand, the April 17, 2023 notice of termination did not include Counter-defendants promise to return the Equipment that had already been delivered and accepted.

58. Contrary to the April 15, 2023 demand, the April 17, 2023 notice of termination demanded that Counter-plaintiffs refund the $95,999.00 directly to Counter-defendants instead of returning the purchase money to TIAA Bank. Due to the deferred payment schedule, Counter-defendants had not and still have not ever made a payment to TIAA Bank under the finance agreement

59. Counter-defendants did not provide Counter-plaintiff with notice prior to terminating the contract for untimely delivery on April 15, 2023, nor had Counter-defendants ever demanded the delivery of the equipment by or on a certain date.

60. Had Counter-plaintiff been provided notice prior to termination, Counter-plaintiff could have and would have performed its obligations in accordance with the parties' agreement.

61. Following Counter-defendants termination of the agreement, Counter-plaintiff

offered to deliver the remaining Equipment, but Counter-defendant reiterated their refusal to accept delivery.

62. In an effort for Counter-plaintiff to mitigate their damages and recovery the delivered Equipment so that the Equipment could be sold to a substitute buyer, on April 28, 2023, Counter-defendants were informed that Counter-plaintiff would return the purchase money upon the return of the delivered Equipment, which Counter-plaintiff would pay to ship. Counter-defendants have yet to return the delivered equipment, which has prevented Counter-plaintiff from being able to sell the Equipment to a substitute buyer.

63. Counter-defendants' conduct has eliminated any value Counter-plaintiff had in the parties Agreement and caused Counter-plaintiff to suffer economic loss in the form of lost profits and incidental damages.

64. All conditions precedent to the bringing of this action have occurred or have been waived.

### VI. BREACH OF CONTRACT (ANTICIPATORY REPUDIATION)

65. Based on the pertinent facts set forth above, Counter-plaintiff brings a claim against Counter-defendants for breach of contract and anticipatory repudiation.

66. On April 17, 2023, Counter-defendants expressed in unequivocal and unconditional terms that they were repudiating the Agreement after the parties had partially performed and while Counter-defendants were still obligated to accept delivery of the Equipment. Counter-defendants have since reiterated their refusal to accept delivery when Counter-plaintiff offered delivery of conforming goods after Counter-defendants repudiation.

67. Counter-defendants claim untimely delivery as the just cause for their repudiation even though a reasonable time for delivery had not yet passed nor had Counter-defendants ever

demanded adequate assurances of Counter-plaintiff's ability to deliver, ever demanded delivery by a date certain, or otherwise provided Counter-plaintiff with notice of Counter-defendants intent to terminate the Agreement due to delay. Therefore, Counter-defendants are without just excuse for repudiating the agreement.

68. Furthermore, Counter-defendant had already been offered and accepted consideration for any delay prior to March 23, 2023, when Counter-plaintiff agreed to provide upgraded equipment.

69. Therefore, Counter-plaintiff brings this claim against Counter-defendants for breach or contract and anticipatory repudiation of the agreement due to Counter-defendants' positive and unconditional repudiation of the parties' agreement on or about April 17, 2023, after the parties had partially performed and while Counter-defendants was still obligations under the Agreement prior to the performance being due and after partial performance of the Agreement without just excuse which resulted in Counter-plaintiff to suffer economic loss in addition to the Agreement's value to Counter-plaintiff to be impaired.

### IV.    BREACH OF CONTRACT (FAILURE TO GIVE NOTICE)

70. Based on the pertinent facts set forth above, Counter-plaintiff brings a claim against Counter-defendant for breach of contract for Counter-defendants failure to provide reasonable notice prior to terminating the Agreement. Specifically, Texas Business and Commerce Code § 2.309(c) provides that a party must give reasonable notice prior to terminating an agreement unless the termination occurred upon the happening of an agreed-upon event. Additionally, Texas Business and Commerce Code § 1.304 requires Counter-defendants to comport with standards of good faith and fair dealings.

71. The parties' Agreement did not provide for an agreed-upon time for shipment or

delivery; therefore, Texas Business and Commerce Code § 2.309(a) provides that the shipment or delivery shall be a reasonable time.

72. As the parties had not agreed on what would be a reasonable time, Counter-defendants termination for untimely delivery on April 17, 2023, was not a termination based upon an agreed event; therefore, Counter-defendants were required to provide Counter-plaintiff with reasonable notice prior to terminating the Agreement. Had Counter-defendants provided Counter-plaintiff with reasonable notice of their intent to terminate for untimely delivery, Counter-plaintiff would have performed within the reasonable notice period.

## V. DAMAGES

73. For Counter-plaintiff's breach of contract claims, Counter-plaintiff seek the following relief from Counter-defendants: (1) actual damages including but not limited to benefit-of-the-bargain damages, out-of-pocket damages, mitigation damages, and lost profits, (2) reasonable attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38, (3) prejudgment and postjudgment interest, and (4) costs.

## IV. REQUEST FOR ATTORNEY'S FEES

74. Opulent hereby requests recovery of court costs and all reasonable and necessary attorney's fees incurred in connection with the defense of the stator fraud claim as the claim is without merit and is groundless in fact or law.

75. Opulent hereby requests recovery of court costs and all reasonable and necessary attorney's fees incurred in connection with the defense of the Texas Deceptive Trade Practice Act claim pursuant to Section 17.50(c) of the Texas Business and Commerce Code.

## V. AMENDMENT & ALTERNATIVE PLEADING

76. Defendant reserves the right to amend this pleading as discovery progresses, as new

information is discovered, and as further allowed by the Federal Rules of Civil Procedure. The claims and defenses asserted in this pleading should also be construed as (counter-)defenses, as appropriate. Where appropriate, the claims and defenses in this pleading are pled in the alternative.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Opulent Digital Specialists LLC prays that Plaintiffs take nothing against Defendant Opulent Digital Specialists LLC and for such other and further relief, both general and special, at law and in equity, to which Defendant Opulent Digital Specialists LLC is entitled.

Respectfully submitted,

EaDo Law, PLLC

/s/ J. Reese Campbell
J. Reese Campbell
Southern District Bar No. 2254986
Texas Bar No. 24045020
Email:  reese@eadolaw.com
3401 Harrisburg Blvd, Suite H2
Houston, TX 77003
Tel. (713) 766-8998
Fax. (713) 347-1880

**ATTORNEY FOR DEFENDANT
OPULENT DIGITAL SPECIALISTS LLC**

## CERTIFICATE OF SERVICE

I certify that on October 16, 2023, a true and correct copy of the foregoing document was served on all counsel of record for the parties in accordance with the Federal Rules of Civil Procedure.

/s/ J. Reese Campbell
J. Reese Campbell