IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTOINE GROUP LLC d/b/a<br>ANTOINE DENTAL CENTER LLC and<br>BEHZAD NAZARI, DDS<br><br>v.<br><br>OPULENT DIGITAL SPECIALISTS, LLC | §<br>§<br>§<br>§   Civil Action No. 4:23-cv-02524<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

1. This motion to dismiss pursuant to FRCP 12(b)(6) and alternatively 12(c) is brought on behalf of Plaintiff **Antoine Group LLC d/b/a Antoine Dental Center LLC** ("Antoine Dental") and Plaintiff **Behzad Nazari, DDS** ("Dr. Nazari") (collectively "Plaintiff") with respect to the counterclaims in Defendant Opulent Digital Specialist LLC's First Amended Answer to Plaintiffs' First Amended Complaint and First Amended Counterclaim ("First Amended Counterclaim") filed on 10/16/2023 (Doc. 21).

2. This lawsuit was brought by Plaintiff Dr. Nazari and his dental practice against Defendant Opulent for Defendant's failure to deliver a milling machine, which is a high-end piece of dental equipment. Plaintiff paid Defendant $95,990 for dental equipment. The Defendant delivered some components of the dental equipment but never delivered the essential milling machine or installed all the equipment so that it would be functional for operation. Per paragraphs 1 and 5 of Defendant's First Amended Counterclaim, it is undisputed that an agreement was entered into in December 2022.[1] Per paragraph 12 of Defendant's First Amended Counterclaim, it is undisputed that Plaintiff paid Defendant on or about 12/27/2022. Per paragraph 7 of Defendant's First Amended Counterclaim, it is undisputed that as of 4/5/2023, more than 90 days after payment was

---

[1] At a few different points, Defendant refers to things happening in December 2023 [sic]. However, it should be obvious from context that these are typos and that Defendant is actually referring to December 2022.

made, the milling machine was not only not delivered, it was not yet even in transit to Plaintiff. As of today, the milling machine component of the dental equipment has not been delivered.

3. Defendant Opulent asserts two "counterclaims" which appear to be nothing more than impermissible repackaging of two of Defendant's defenses as counterclaims. The repackaging of defenses as affirmative claims is disfavored and such claims can be subject to dismissal under Rule 12(b)(6). *See, e.g.*, Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc., Civil Action No. 3:18-CV-0587-N, 2019 U.S. Dist. LEXIS 170933, at *4 (N.D. Tex. 2019); *see also* Ford Motor Co. v. Obsolete Ford Parts, 318 F. Supp. 2d 516, 521 (E.D. Mich. 2004) (noting in the context of a 12(b)(6) motion that "*the two remaining theories that Defendant wishes to pursue as counterclaims do not form a basis for an affirmative claim for damages, but are more appropriately considered affirmative defenses*"). Plaintiff previously filed a motion to dismiss (Doc. 20) to Defendant's prior counterclaim (Doc. 17). Defendant's amended counterclaim adds a few additional details but ultimately fails to correct the fundamental legal deficiencies in Defendant's counterclaims. As further explained below, both of Defendant's counterclaims are without merit on their face, are inadequately pled, and should therefore be dismissed.

### I. CLAIM FOR "BREACH OF CONTRACT (ANTICIPATORY BREACH)"

4. In paragraphs 65-69 of Defendant's First Amended Counterclaim, Defendant Opulent asserts a purported counterclaim for "anticipatory breach" alleging that Plaintiff has refused to accept delivery of equipment which Plaintiff has already paid Defendant for in full. This claim fails on its face for a few different reasons.

5. First, the doctrine of anticipatory breach a/k/a anticipatory repudiation can only apply against a party that has remaining material non-monetary performance obligations. *See* RESTATEMENT (SECOND) OF CONTRACTS § 250 ("*When a Statement or an Act Is a Repudiation*"). "*An anticipatory repudiation of a contract may consist of either words or actions by a party to a*

*contract that indicate an intention that he or she is not going to perform the contract according to its terms in the future.*" Builders Sand, Inc. v. Turtur, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ). As one court has explained: "*the doctrine of anticipatory repudiation is more limited than what [the party] contend[s]—the doctrine applies only where both parties to the contract have not fully performed.*" Cassis v. Sun Life Assurance Co. of Can., No. SA CV 17-0148-DOC (KESx), 2018 U.S. Dist. LEXIS 226326, at *23 (C.D. Cal. 2018). The agreement in question is indisputably subject to the Texas Uniform Commercial Code, which begins its definition of anticipatory repudiation as follows: "*When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other. . . .*" TEX. BUS. & COM. CODE § 2.610.

6. A party who has no remaining performance obligations cannot repudiate or anticipatorily breach a contract for the simple and obvious reason that there are no obligations for the party to breach. In this case, it is undisputed that Plaintiff, the buyer, fully paid Defendant, the seller, for the equipment in question. Defendant does not identify any performance obligation—much less a material and non-monetary performance obligation or a performance obligation which would "substantially impair the value of the contract" to Defendant—that Plaintiff still owed to Defendant that Plaintiff could possibly anticipatorily breach or repudiate.

7. <u>Second</u>, the "counterclaim" is absurd and inviable on its face because, again, Defendant has already been fully paid, so there is nothing for Defendant to sue for under Defendant's counterclaim. Rather, it appears that Defendant has asserted this counterclaim for impermissible purposes including: (a) recovering attorney's fees for defending a breach of contract claim which is not permissible under Texas law and (b) impeding Plaintiff's ability to fairly and efficiently obtain a final judgment on Plaintiff's affirmative claims.

8. <u>Third</u>, even if Plaintiff accepting delivery of equipment were in some sense a performance

obligation of Plaintiff, the doctrine of anticipatory repudiation does not apply to every breach but only material breaches. *See* TEX. BUS. & COM. CODE § 2.610 ("*When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other. . . .*"); *see also* Levine v. Steve Scharn Custom Homes, Inc., 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("*A party is excused from further performance of a contract only when the breach by the other party is material.*"). It is undisputed that Defendant is a seller of equipment who has been fully paid. Nothing in Defendant's counterclaim suggests that the value of the contract to Defendant, who has already been fully paid, would be substantially impaired if Plaintiff did not accept delivery. Also, Defendant does not even claim that Defendant has the equipment. Rather, Defendant was supposed to order the equipment from a third party. So Defendant would not even incur storage fees or any out of pocket expenses by not making delivery. Instead, Defendant would potentially actually save money by avoiding any delivery fees for which Defendant would otherwise be responsible.

## II. CLAIM FOR "BREACH OF CONTRACT (FAILURE TO GIVE NOTICE)"

9. In paragraphs 70-72 of Defendant's First Amended Counterclaim, Defendant Opulent asserts a purported counterclaim for "breach of contract" alleging: "*failure to provide reasonable notice prior to terminating the agreement*" which Defendant claims is mandated by TEX. BUS. & COM. CODE § 2.309 (UCC 2-309).

10. <u>First</u>, as with Defendant's "anticipatory breach" counterclaim, it is undisputed that Defendant has been fully paid. So this counterclaim appears to be for impermissible purposes including: (a) recovering attorney's fees for defending a breach of contract claim which is not permissible under Texas law and (b) impeding Plaintiff's ability to fairly and efficiently obtain a final judgment on Plaintiff's affirmative claims.

11. <u>Second</u>, Defendant is misinterpreting TEX. BUS. & COM. CODE § 2.309 (UCC 2-309) as

being a statutory notice and cure provision when it simply is not. Section 2.309 says:

> *(a) The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time.*
> *(b) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.*
> *(c) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.*

Defendant appears to be misinterpreting Subsection (c) as creating some sort of statutory notice and cure provision. Although Subsection (c) calls for notice, it does not say anything about an opportunity to cure. Instead, as explained in Official Comment 8 to UCC 2-309 explains: "*Subsection [(c)] recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement.*" Defendant's counterclaim does not assert that Plaintiff denied Defendant an opportunity to seek a **_substitute arrangement_** or that Defendant even wanted one. Instead, it alleges that Plaintiff denied Defendant an opportunity to force Plaintiff to stay in the **_same arrangement_**. Official Comment 9 also explains: "*Justifiable cancellation for breach is a remedy for breach and is not the kind of termination covered by the present subsection.*" In conferring with Defendant before filing this Motion, Defendant referred to the case Coburn Supply Co. Inc. v. Kohler Co., 342 F.3d 372 (5th Cir. 2003) as purportedly supporting Defendant's view. But that case actually supports Plaintiff's position. The Coburn Supply case involved a distributor relationship and the pertinent issue was whether the terminating party gave its distributor enough advance notice to find someone else to work with. It cites to and quotes Official Comment 8. The Fifth Circuit in that case ultimately overturned a jury finding that the notice given was insufficient and found that it was sufficient as a matter of law.

12. <u>Third</u>, Defendant does not allege that Defendant objected to termination or what period of notice of termination should have been given. Official Comment 6, which is cited and quoted with approval by the Fifth Circuit in the Coburn Supply case, says with respect to Subsection (c): "*Parties to a contract are not required in giving reasonable notification to fix, at peril of breach, a time which is in fact reasonable in the unforeseeable judgment of a later trier of fact. Effective communication of a proposed time limit calls for a response, so that failure to reply will make out acquiescence.*" In this case, Defendant does not even allege that Defendant objected to termination, much less alleged that some different advance notice of termination should have been given or was demanded by Defendant. Rather, per paragraphs 8 and 55 of Defendant's First Amended Counterclaim, Defendant alleges that it offered to give Plaintiff a refund. And to reiterate, Defendant has indisputably already been fully paid and Defendant is not seeking damages due to some alleged inability to seek a substitute arrangement. So from the face of Defendant's pleading, Defendant has no injury or damages, which is an essential element of a breach of contract claim.

13. <u>Finally</u>, in paragraph 70, Defendant includes a reference to the UCC's duty of good faith and fair dealing set out in Tex. Bus. & Com. Code § 1.304 (UCC 1-304). This is something that Defendant added in that was not in Defendant's prior Counterclaim in an apparent effort to try to get some part of this claim to stick. However, "*this section does not support an independent cause of action for failure to perform or enforce in good faith.*" <u>Smith v. JPMorgan Chase Bank, N.A.</u>, 699 F. App'x 393, 394 (5th Cir. 2017); *see also* <u>N. Nat. Gas Co. v. Conoco, Inc.</u>, 986 S.W.2d 603, 606 (Tex. 1998). Additionally, like in the Smith v. JP Morgan case, the Defendant in this case does not identify any contractual provision to which Section 1.304 would apply or how it would apply. Section 1.304 even less imposes an implied notice and opportunity to cure provision than Section 2.309 does. As the official comment to what is now Section 1.304 explains: "*the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which*

*they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.*" See also Dobyns v. United States, 915 F.3d 733, 739 (Fed. Cir. 2019). If there were a preexisting contractual duty to give notice and a reasonable opportunity to cure, Section 1.304 might theoretically guide what sort of notice or reasonable opportunity would need to be given. However, Section 1.304 does not have the effect of impliedly creating new contractual provisions out of whole cloth where no such express contractual provisions exist, particularly on topics like termination and repudiation which are already addressed explicitly in the UCC.

## **PRAYER**

Plaintiff prays that the Court dismiss Defendant's counterclaims and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ **Charles R. Parker**
Charles R. Parker
Charlie@parkersanchez.com
Federal Bar # 2314
C. Anderson Parker
Andy@parkersanchez.com
Federal Bar # 567726
Cooke Kelsey
Cooke@parkersanchez.com
Federal Bar # 2896155
Parker & Sanchez PLLC
700 Louisiana St., Suite 700
Houston, TX 77002
(713) 659-7200 (P)

Wayman L. Prince
Wayman@wlplaw.com
Federal Bar # 7315
Law Offices of Wayman L. Prince
9111 Katy Freeway, Suite 301
Houston, TX 77024

(713) 467-1659

## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of November, 2023, a true and correct copy of this instrument was served upon all parties *via Email* in compliance with the Federal Rules of Civil Procedure.

/s/ Charles R. Parker
_____
Charles R. Parker